UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| | | | |
|---|---|---|---|
| Case No. | 2:19-CV-05849-CAS-MRWx | Date | August 26, 2020 |
| Title | INT'L BROTHERHOOD OF TEAMSTERS, LOCAL 848 V. MV TRANSP., INC. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | | |
|---|---|---|---|
| Catherine Jeang | Not Present | | N/A |
| Deputy Clerk | Court Reporter / Recorder | | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: | |
| Not Present | | Not Present | |

**Proceedings:** (IN CHAMBERS) - DEFENDANT'S MOTION MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6) (ECF No. 43, filed on July 15, 2020)

## I.   INTRODUCTION

Plaintiff International Brotherhood of Teamsters, Local 848 ("Local 848"), an affiliate of the International Brotherhood of Teamsters ("IBT") union, filed this action against MV Transportation, Inc. ("MV") on July 9, 2019 stating a single claim for breach of contract between an employer and a labor organization pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185 ("Section 301"). See ECF No. 1 ("Compl.").

MV filed an answer to the complaint on August 14, 2019. See ECF No. 9 ("Answer"). MV then filed a motion for judgment on the pleadings on May 8, 2020. See ECF No. 29 ("Mot."). On June 1, 2020, the Court granted the motion on grounds that Local 848 failed to allege a breach of contract, but granted Local 848 leave to amend. See ECF No. 37 ("June 1 Order").

Local 848 filed a first amended complaint on July 1, 2020. See ECF No. 39 ("FAC"). The FAC asserts two claims for relief. First, Local 848 claims that MV breached its National Master Agreement ("NMA") with IBT and Local 848 by allegedly refusing to recognize a bargaining unit comprised of all employees at MV's West Hollywood and Beverly Hills location. The second claim, by contrast, asserts that MV anticipatorily breached the NMA when, in June 2019, MV generally refused to recognize any bargaining unit, regardless of its composition, in contravention of its obligations.

MV filed a motion to dismiss both claims on July 15, 2020. See ECF No. 43 ("MTD"). Local 848 filed an opposition on July 27, 2020. See ECF No. 46 ("MTD Opp."). MV filed a reply on August 3, 2020. See ECF No. 47 ("MTD Reply").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:19-CV-05849-CAS-MRWx | Date | August 26, 2020 |
|---|---|---|---|
| Title | INT'L BROTHERHOOD OF TEAMSTERS, LOCAL 848 V. MV TRANSP., INC. | | |

Having considered the parties' arguments and submissions, the Court concludes as follows.

## II.   RELEVANT ALLEGATIONS

### A.   IBT and MV Enter Into A National Labor Agreement Establishing Card-Check Bargaining Procedures For "Appropriate" Employee Units

Local 848 is an affiliate of the IBT union based in Glendora, California. In 2008, IBT entered into a national labor agreement with MV, a California busing and transit company that performs services under contract for the cities of Beverly Hills and West Hollywood, California. The National Master Agreement ("NMA") requires MV to cooperate with certain efforts by IBT and its affiliates to organize bargaining units at MV, and to voluntarily recognize a union if the organizers can establish majority support using the "card check" method rather than insisting upon a formal election conducted by the National Labor Relations Board ("NLRB"). Specifically, the NMA requires MV to "enter into a position of neutrality concerning any organizing of its locations by affiliates of the IBT" in accordance with "the terms of the attached (general) card check / neutrality document." FAC ¶¶ 7-10.

The attached "card check / neutrality document" is known as the National Card Check and Neutrality Agreement ("NCCNA"). FAC ¶ 12. The NCCNA sets forth the card check process used as an alternative to an NLRB election to determine whether a given subset of MV employees intend to be represented by IBT in collective bargaining. The procedure is as follows: (1) a local IBT affiliate submits a written request to organize an "appropriate bargaining unit" of employees at MV; (2) MV must select a neutral third party and provide a list of all employees in the appropriate bargaining unit to that neutral third party; (3) the neutral third party counts and verifies the signatures of employees in the appropriate bargaining unit; and (4) if the neutral third party finds that the majority of employees in the appropriate bargaining unit have selected IBT as their local union, MV must recognize and meet with IBT to negotiate the terms of a collective bargaining agreement. Id. ¶¶ 12-13; id. at Ex. 2 at 1.

The NCCNA defines the appropriate bargaining units eligible to be organized pursuant to the card check method as "[a]ll full-time and regular part-time drivers employed at MV Transportation locations, *but excluding* dispatchers, reservationists, utility/bus washers, mechanics and similar maintenance employees, office clerical employees, managerial employees, guards, and supervisors as defined by the National

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-CV-05849-CAS-MRWx | Date | August 26, 2020 |
|---|---|---|---|
| Title | INT'L BROTHERHOOD OF TEAMSTERS, LOCAL 848 V. MV TRANSP., INC. | | |

Labor Relations Act." FAC ¶ 20 (quoting id. Ex. 2 at § A.1) (emphasis added). The provision further provides that "[t]his defined Bargaining Unit may be altered or amended," but only "by mutual agreement of the Union and the Company on a case by case basis." Id.

### B. Local 848 Alleges That The NCCNA Is Ambiguous, And That MV's Course of Performance Is To Bargain With Any Employee Unit

Local 848 alleges that the NCCNA is ambiguous since it "does not include definitions of the terms used to describe the employees included in and excluded from" the definition of an appropriate bargaining unit. Id. ¶ 21. For example, Local 848 alleges that the NCCNA "does not describe whether an employee who is assigned to drive sometimes, but to perform other work at other times, is a 'driver'" who is within the appropriate bargaining unit, or not. Id. Local 848 also alleges that the NCCNA "does not state whether employees other than those specifically described in the NCCNA should be included or excluded," such as "customer service representatives." Id. Local 848 also alleges that MV has entered into collective bargaining agreements with IBT locals for employee units that include employees not classified as drivers. Id. ¶ 23.

In fact, according to Local 848, it has been MV's practice to bargain with any employee unit proposed by an IBT affiliate, whether or not that employee unit is clearly covered by the NMA or NCCNA. Id. ¶ 25. In "[e]ach" instance where Local 848 or an IBT-affiliate has sought to organize employees, Local 848 alleges that MV has agreed to enter into a local CCNA with that unit of employees, even where the scope of employees included within the proposed bargaining unit is not specified, or different from the scope set forth in the NCCNA. Id.

### C. Local 848 Attempts to Initiate The "Card Check" Procedure To Organize MV Employees In Los Angeles, And MV Allegedly Refuses

Local 848 alleges that there are around 30 employees at MV, of whom 25 are drivers. FAC ¶ 28. According to Local 848, the five non-driver employees—three dispatchers, a one road supervisor, and a mechanic—"regularly" perform "the same driving duties as the drivers." Id. In May and June 2019, Local 848 claims it received signatures from a majority of all 30 employees at MV's Los Angeles location indicating that these employees wished to be represented by the IBT. See id. ¶ 29. Local 848 alleges that this included a majority of employees with the job title or classification of "driver," but also included a majority of the MV employees who were not classified as drivers. Id. Local 848 proposed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-CV-05849-CAS-MRWx | Date | August 26, 2020 |
|---|---|---|---|
| Title | INT'L BROTHERHOOD OF TEAMSTERS, LOCAL 848 V. MV TRANSP., INC. | | |

to represent all of the employees, whether or not they were classified as drivers, in a single bargaining unit. Id.

After collecting these signatures, Local 848 claims that it contacted MV's Director of Labor Relations on June 13, 2019 and requested union recognition in accordance with the card check procedure set forth in the NMA and NCCNA. Id. ¶ 30. According to Local 848, MV's Director of Labor Relations refused that request for voluntary recognition. Id. ¶ 32. MV allegedly informed Local 848 on the telephone on June 13 and June 21 that MV was not only free to reject the card check results for the bargaining unit proposed and insist upon an NLRB-supervised election, but that MV was not even obligated to participate in a card check for *any* bargaining unit of employees. Id. ¶ 34.

Local 848 responded on July 5, 2019, by insisting that MV was obligated to recognize the card check results, and sending MV a "draft" of a local CCNA (the "proposed CCNA"). Id. ¶ 36; id. Ex. 8. Among other differences, the proposed CCNA defines the appropriate bargaining units eligible to be organized pursuant to the card check process to include not only "full-time and regular part-time drivers" but also "dispatchers, road supervisors, mechanics, and other maintenance employees" who perform services under MV's contracts with the cities of Beverly Hills and West Hollywood. Id. Ex. 8. MV did not respond to Local 848, or accept the proposed CCNA.

### D.  Local 848 Files Suit Alleging Breaches of the NMA

In its first amended complaint, Local 848 claims that MV breached its obligations under the NMA when it "refused to enter into" the proposed CCNA to cooperate in the organization of the proposed bargaining unit. See FAC ¶¶ 39-48. Additionally, Local 848 claims that MV also breached its obligations under the NMA by "repudiating" any obligation to recognize *any* bargaining unit of employees, no matter its composition, as allegedly asserted in telephone conversations on June 13 and June 21. Id. ¶¶ 49-58.

### III.  LEGAL STANDARD

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-CV-05849-CAS-MRWx | Date | August 26, 2020 |
|---|---|---|---|
| Title | INT'L BROTHERHOOD OF TEAMSTERS, LOCAL 848 V. MV TRANSP., INC. | | |

not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. (internal citations omitted).

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see also Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

### IV. DISCUSSION

Breach of contract claims under Section 301 of the LMRA are governed by the federal common law. See Livadas v. Bradshaw, 512 U.S. 107, 121-22 (1994). And the federal common law that applies to Section 301 follows the maxim that a defendant cannot breach a contractual obligation that does not exist. See, e.g., CNH Am. LLC v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. (UAW), 645 F.3d 785, 789 (6th Cir. 2011) (affirming dismissal of Section 301 action for breach of contract when plaintiff failed to allege "a provision purporting to obligate" the defendant to undertake the action it allegedly failed to perform); United Steel, Paper & Forestry, Rubber Mfg., Allied Industrial & Services Workers Int'l Union v. ConocoPhillips Co., No. 08-CV-02068-PSG (FFMx), 2009 WL 1610074, at *4 (C.D. Cal. May 5, 2009) (dismissing a Section 301 breach of contract action as a matter of law because the terms of a collective bargaining agreement were explicit and created no enforceable obligation).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-CV-05849-CAS-MRWx | Date | August 26, 2020 |
|---|---|---|---|
| Title | INT'L BROTHERHOOD OF TEAMSTERS, LOCAL 848 V. MV TRANSP., INC. | | |

Local 848 alleges two claims for breach of the parties' agreements. The first claim alleges that MV breached the NMA by refusing to recognize a bargaining unit comprised of all employees at MV's West Hollywood and Beverly Hills location. The second claim, by contrast, asserts that MV anticipatorily breached the NMA when, in June 2019, MV generally refused to recognize any bargaining unit, regardless of its composition, in contravention of its obligations.

### A. Breach of The NMA By Refusing To Recognize The Proposed Bargaining Unit of All MV Employees

In its first claim for relief, Local 848 alleges that MV breached the NMA in violation of Section 301 by failing to cooperate in the card check process to organize its West Hollywood and Beverly Hills location employees, and by insisting upon an NLRB election. MV moves to dismiss that claim on grounds that, as it contended in connection to that claim as alleged in the original complaint, MV had no contractual obligation to cooperate in the requested card check process because Local 848 sought to organize ineligible employees not included in the appropriate bargaining units set forth by the NMA and NCCNA. Local 848 responds that the NMA and NCCNA are ambiguous, and that, based on allegations of MV's custom, practice, and course of performance, MV "was obligated to enter into a CCNA with Local 848 upon receipt of reasonable notice that Local 848 wished to organize or represent a group of MV employees," regardless of which employees Local 848 proposed to organize and represent. MTD Opp. at 7.

On this claim for relief, the Court again agrees with MV. Neither the NMA nor the NCCNA are ambiguous, and the Court is therefore obligated to apply the express terms of those documents. See NLRB v. Int'l Bhd. of Elec. Workers, Local 11, 772 F.2d 571, 575 (9th Cir. 1985) (holding that, where a labor contract's express provisions are unambiguous, those terms govern); see also Carpenters Pension Trust Fund v. Underground Constr. Co., 31 F.3d 776, 778 (9th Cir. 1994) (ruling that whether a contract is or is not ambiguous is a question of law).[1] As the Court found in connection with Local 848's original complaint,

---

[1] The Court is not persuaded by Local 848's argument that the agreements are ambiguous because they fail to use defined terms, or leave unresolved whether customer service representatives, for example, are included in or excluded from an appropriate bargaining unit. Cf. FAC ¶¶ 21-23; MTD Opp. at 5-8. The terms used by the agreements are sufficiently definite. The NMA explains that its obligations apply "under the terms" set forth in the NCCNA, meaning in accordance with that document. The NCCNA, in turn,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-CV-05849-CAS-MRWx | Date | August 26, 2020 |
|---|---|---|---|
| Title | INT'L BROTHERHOOD OF TEAMSTERS, LOCAL 848 V. MV TRANSP., INC. | | |

the express language of the NCCNA attached to the NMA makes clear that MV's obligation to "enter into a position of neutrality" with respect to Local 848's organizing efforts *only* arises when Local 848 (or another IBT affiliate) attempts to organize MV employees within an "appropriate bargaining unit" that is limited to "full-time and regular part-time drivers," and not other employees.

Although Local 848 alleges and argues that extrinsic evidence of MV's custom, practice, and course of conduct establishes that MV had an obligation to enter into the proposed CCNA, which would require MV to cooperate in the organization of a different and larger unit of employees including non-drivers, those allegations are legally irrelevant and cannot be used to elide the plain language of the NMA and NCCNA. See Unite Here Local 30 v. Volume Servs., Inc., 723 F. App'x 403, 405 (9th Cir. 2018) (holding that "extrinsic evidence offered to vary or contradict" a labor agreement's "clear meaning may not be considered by the court"). The express language of the NMA does not obligate MV to abide by the terms of any CCNA other than the NCCNA attached to that agreement. And the NCCNA itself makes clear that it may only be amended "by mutual agreement of the Union and the Company on a case by case basis." No mutual agreement to adopt the broader appropriate bargaining unit contained in the proposed CCNA is alleged here—and in fact, the gravamen of the allegations in this lawsuit is that the opposite is true. The express terms of the parties' agreement therefore foreclose the union's interpretation of MV's obligations. See ConocoPhillips Co., 2009 WL 1610074, at *4 ("Since it is the Court's function to interpret the contract, it need not accept as true Defendant's construction of contractual language if it is not reasonable.") (citing United States v. King Features Entm't, Inc., 843 F.2d 394, 398 (9th Cir. 1988)).

---

states that only "full-time and regular part-time drivers" may be included in an appropriate bargaining unit, while all others—including "mechanics," "dispatchers," "reservationists," "office clerical employees," and "managerial employees"—are excluded. See FAC, Ex. 2 at 1. A customer service representative is an "office clerical employee" that cannot reasonably be described as a driver. To the extent Local 848 contends it is unclear which persons qualify as "regular part-time drivers," it is clear to the Court that that term cannot apply to the five non-driver employees at MV who are classified as "mechanics," "dispatchers," and a "road supervisor," see FAC ¶ 28, even if those persons allegedly assume some unspecified driving duties on occasion, since those classifications are expressly excluded from the scope of appropriate bargaining units, see id. Ex. 2 at 1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-CV-05849-CAS-MRWx | Date | August 26, 2020 |
|---|---|---|---|
| Title | INT'L BROTHERHOOD OF TEAMSTERS, LOCAL 848 V. MV TRANSP., INC. | | |

Since MV is not obligated by the NMA and NCCNA to cooperate in the organization of the broader set of employees Local 848 proposed to organize, MV could not have breached those agreements when it insisted upon an NLRB election for those employees. As Local 848's first claim for relief alleges a breach of a nonexistent contractual obligation, the motion to dismiss that claim is **GRANTED**. See CNH Am. LLC, 645 F.3d at 789 (affirming dismissal); ConocoPhillips Co., 2009 WL 1610074, at *4 (granting motion to dismiss).

### B. Breach of The NMA By Repudiating Any Obligation To Recognize The Results of Any Card Check Process, Regardless of Bargaining Unit

The second claim, asserted for the first time in the first amended complaint, presents a closer question. In that claim, Local 848 alleges that MV repudiated its agreements with Local 848 when it generally refused to cooperate with any card check process, regardless of the bargaining unit proposed to be organized. See FAC ¶¶ 49-58. To state a claim for anticipatory repudiation of a labor agreement governed by Section 301 of the LMRA, a plaintiff must allege that the defendant made "a positive, unconditional, and unequivocal declaration of fixed purpose not to perform the contract in any event or at any time." See Minidoka Irrigation Dist. v. U.S. Dep't of Interior, 154 F.3d 924, 926-27 (9th Cir. 1998) (applying federal common law) (quotation omitted); accord Olson v. Bemis Co., 800 F.3d 296, 305 (7th Cir. 2015) (applying this standard to a claim for breach of contract under Section 301) (citing Restatement (Second) of Contracts § 250 (1981)).

According to Local 848, MV committed such a breach when, by telephone, its labor relations manager allegedly informed Local 848's business manager that MV had no obligation to cooperate in any card check bargaining procedures, no matter what employees Local 848 intended to organize. See FAC ¶¶ 28-34. Local 848 contends that MV's alleged statements are comparable to the defendant employer's statements in Sidhu v. Flecto Co., 279 F.3d 896 (9th Cir. 2002), where the Ninth Circuit held that the employer's flat refusal to participate in the adjudication of a particular employee's grievance in accordance with a labor agreement amounted to a repudiation of the entire labor agreement, id. at 899-900. MV responds that (i) it could not have repudiated an obligation it does not have, and (ii) the evidence and allegations demonstrate that MV did not in fact repudiate. See MTD Reply at 7-8.

At this stage, Local 848 has alleged enough to state its second claim for relief. While MV is correct that it could not be liable for repudiating a contractual obligation it does not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-CV-05849-CAS-MRWx | Date | August 26, 2020 |
|---|---|---|---|
| Title | INT'L BROTHERHOOD OF TEAMSTERS, LOCAL 848 V. MV TRANSP., INC. | | |

have, see, e.g., Fairfax v. Washington Metro. Area Trans. Auth., 582 F.2d 1321, 1327 (4th Cir. 1978) (applying federal common law), that is not Local 848's theory in its *second* claim. Rather, in its second claim, Local 848 alleges that MV repudiated its obligation under the NMA and NCCNA to cooperate with the organization of its employees *even within* the appropriate bargaining unit set forth by the NCCNA. See FAC ¶¶ 28-34, 49-58. Accepting the truth of Local 848's factual allegations about what was said on the June 17 and June 21 phone calls and drawing all inferences in Local 848's favor, which the Court must do at the pleading stage, Local 848 has stated a claim for anticipatory breach of the parties' agreements.

MV's factual arguments that the evidence and exhibits attached to the first amended complaint "belies" Local 848's allegations of unequivocal repudiation, see MTD Reply at 8, might defeat Local 848's allegations at a later stage of the litigation, or they might not. See, e.g., Pac. Coast Eng'g Co. v. Merritt-Chapman & Scott Corp., 411 F.2d 889, 894 (9th Cir. 1969) ("In each case, it is a question of fact as to whether or not a party has committed an anticipatory breach by repudiating the contract."). But at this stage, such a determination would be premature. See Den-Mat Holdings, LLC v. CAO Grp., Inc., No. 18-CV-06358-CAS (JEMx), 2019 WL 3890825, at *11 (C.D. Cal. Aug. 19, 2019) (explaining how questions of contractual repudiation, retraction, and reliance are questions of fact that cannot be resolved as a matter of law). For that reason, the motion to dismiss the second claim for relief is **DENIED**.

**V.      CONCLUSION**

For the foregoing reasons, MV's motion to dismiss the first amended complaint is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** as to the first claim for relief, which is dismissed with prejudice. The motion is **DENIED** as to the second claim for relief.

IT IS SO ORDERED.

                                                                                    00  :  00

                                                        Initials of Preparer          CMJ